[2 NYS3d 860]

In the Matter of CAR FACTORY, INC., et al., Petitioners, v NEW YORK STATE DEPARTMENT OF MOTOR VEHICLES et al., Respondents.

Supreme Court, Bronx County, December 16, 2014

### APPEARANCES OF COUNSEL

*Vincent P. Nesci, P.C.*, Mount Kisco (*Vincent P. Nesci* of counsel), for petitoners.

*Eric T. Schneiderman, Attorney General*, New York City, for respondents.

### OPINION OF THE COURT

KENNETH L. THOMPSON, JR., J.

Petitioners, Car Factory, Inc. (Car Factory) and Robert J. Erickson (Erickson), petition this court pursuant to CPLR article 78, (1) to stay, pursuant to CPLR 7805, the revocation of Car Factory's public inspection station license and Erickson's certified motor vehicle inspector's license; (2) for a final judgment annulling the determination which revoked the petitioners' licenses; and (3) for removal of the matter to respondents for the imposition of a lesser penalty consistent with the determination of this court, or in the alternative, a final judgment annulling the determination and a prohibition to the respondents bringing any further proceedings against petitioners.

Car Factory is licensed to perform automotive yearly inspections. Erickson is the owner of Car Factory and Erickson is a certified motor vehicle inspector, licensed to perform motor vehicle inspections.

It was determined by the Administrative Law Judge (ALJ) that a substitute vehicle was used on 17 inspected vehicles during emission testing with Erickson's certification card. The penalty for revocation of the licenses of both Car Factory and Erickson was $350 for every violation for a total of $5,950 for Car Factory and another $5,950 for Erickson and the revocation of both Car Factory's and Erickson's licenses. The Department of Motor Vehicles Appeals Board affirmed the ALJ's determinations.

Congress, in the Clean Air Act, has found that

> "the growth in the amount and complexity of air pollution brought about by urbanization, industrial development, and the increasing use of motor

vehicles, has resulted in mounting dangers to the public health and welfare, including injury to agricultural crops and livestock, damage to and the deterioration of property, and hazards to air and ground transportation." (42 USC § 7401 [a] [2].)

The purpose of the Clean Air Act is "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." (42 USC § 7401 [b] [1].) In order to achieve the Clean Air Act's purpose, the Environmental Protection Agency requires vehicle emission testing. "An ongoing quality assurance program shall be implemented to discover, correct and prevent fraud, waste, and abuse and to determine whether procedures are being followed, are adequate, whether equipment is measuring accurately, and whether other problems might exist which would impede program performance." (40 CFR 51.363.)

Erickson does not dispute that 17 vehicles were fraudulently inspected with his certification card at Car Factory. Erickson argues that a "faithless employee" used his certification card without his permission. "Petitioner['s] . . . alleged lack of awareness of the misconduct of a certified inspector . . . does not relieve petitioners of the responsibility for inspection activities conducted at the facility (*see* 15 NYCRR 79.8 [b]; 79.17 [c] [1]; *see also Matter of Weston v Adduci*, 140 AD2d 444 [2d Dept 1988])." (*Matter of San Miguel Auto Repair Corp., v State of N.Y. Dept. of Motor Vehs.*, 111 AD3d 422, 423 [1st Dept 2013].) Furthermore, in *Matter of San Miguel Auto Repair Corp*, the financial penalty and revocation of the inspection station's license was held to "not shock our sense of fairness." (*Id.* at 423.) With respect to the revocation of the petitioners' licenses, the violations herein undermine the integrity of the inspection process itself. Where there is a rational basis for an agency's findings and conclusions a court may not substitute its judgment. (*Matter of Howard v Wyman*, 28 NY2d 434 [1971].) It should be noted that $350 is the minimum penalty that may be imposed per violation. One thousand dollars is the maximum. (Vehicle and Traffic Law § 303 [h].) Thus, the minimum financial penalty was imposed upon the petitioners.

"[T]he test is whether such punishment is ' "so disproportionate to the offense, in the light of all the circumstances, as to be shocking to one's sense of fairness".' (*Matter of McDermott v. Murphy*, 15 A D 2d 479, affd. 12 NY2d 780; *Matter of Stolz v. Board of Regents*, 4 A D 2d 361, *supra*)." (*Matter of Pell v Board of Educ. of Union Free School Dist.*

*No. 1 of Towns of Scarsdale & Mamaroneck, West-chester County*, 34 NY2d 222, 233 [1974].)

The penalties imposed do not shock this court's sense of fairness, and have a rational basis.

Petitioners cite to *D&B Auto Repair v State of New York Dept. of Motor Vehs.* (2013 NY Slip Op 33814[U] [Sup Ct, Bronx County 2013]) to support their argument that the imposition of a $350 fine for each petitioner for each of their separate violations and the revocation of both petitioners' licenses amounts to a double penalty. However, *D&B Auto Repair* is easily distinguishable. In *D&B Auto Repair*, the inspector and inspection station were both fined for the same violations of Vehicle and Traffic Law § 303 (e) (3). It was the violation of the same statute for both the inspector and inspection station which was held to be a double penalty in *D&B Auto Repair*. In the case at bar, Car Factory was fined for violation of Vehicle and Traffic Law § 303 (e) (3), while Erickson was fined for violation of 15 NYCRR 79.17 (c) (2). Erickson's fine, unlike the inspection station, was imposed for failing to secure his inspection card.

Accordingly, the petition is denied in its entirety.